ALICE M. BATCHELDER, Chief Judge,
dissenting.
This case involves heinous wrongdoing, both on the part of Foust and on the part of those who were charged with his care as a young child. There is no doubt that Foust endured a truly horrific childhood. And I cannot disagree with the majority’s conclusion that his counsel performed deficiently for failing to conduct further investigation during the mitigation phase.[1] However, I do not agree with the majority that the Ohio Court of Appeals’ conclusion that Foust was not prejudiced as a result of his counsel’s performance was unreasonable.
The majority has determined that “[t]he new evidence about Foust’s family is overwhelming, and it undermines reasonable confidence in the reliability of Foust’s death sentence.” The majority then concludes that the Ohio Court of Appeals’ contrary determination is unreasonable. The majority reaches this conclusion only by distorting the factual record and by conflating fair-minded disagreement with unreasonableness. Without determining whether any reasonable argument could support the state court’s decision that Foust was not prejudiced, the majority evaluates the evidence and makes its own conclusion. It then pronounces “unreasonable” that with which it disagrees. But the Supreme Court has made clear that *547 “an unreasonable application of federal law is different from an incorrect application of federal law.” Williams v. Taylor, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Our task is not to determine whether or not we agree with the state court. Rather, our task is to determine whether “there is any reasonable argument that counsel satisfied Strickland’s deferential standard.” See Harrington v. Richter, — U.S.-, 131 S.Ct. 770, 788, 178 L.Ed.2d 624 (2011) (emphasis added). Because I believe that there are reasonable arguments to support the state court’s determination, I respectfully dissent.
“The standards created by Strickland and § 2254(d) are both ‘highly deferential,’ and when the two apply in tandem, review is ‘doubly’ so.” Id. (citations omitted). In order to prevail under Strickland, a petitioner must show (1) that his “counsel’s representation fell below an objective standard of reasonableness,” and (2) that the petitioner was prejudiced by counsel’s performance. Strickland v. Washington, 466 U.S. 668, 687-88, 691, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove prejudice, a petitioner must demonstrate “a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Id. at 694, 104 S.Ct. 2052. A petitioner must meet both prongs of Strickland, and the court may address them in either order. Id. at 697, 104 S.Ct. 2052 (“If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.”).
The state court’s decision simply cannot be called an unreasonable application of Strickland. Much of the evidence that the majority characterizes as “new” is substantially similar to evidence that was presented to the three-judge panel (evidence, I would add, that the three-judge panel specifically found to be insufficient to outweigh the statutory aggravators, see App’x Yol. 2 at 503 (Trial Ct. Op.)). The remaining evidence, which is arguably not cumulative, does not compel the conclusion that Foust’s death sentence was unreliable.
“[I]n order to establish prejudice, the new evidence that a habeas petitioner presents must differ in a substantial way— in strength and subject matter — from the evidence actually presented at sentencing.” Hill v. Mitchell, 400 F.3d 308, 319 (6th Cir.2005) (emphasis added) (surveying cases in which habeas petitioners claimed prejudice). Although Foust now presents more detailed (and therefore arguably stronger) mitigation evidence, most of his evidence simply does not differ in subject matter from that which the sentencing panel heard in the first instance.
For example, the new evidence about the condition of Foust’s childhood home is more vivid and detailed than what the three-judge panel heard at sentencing. At sentencing, Gary Foust testified that the home was not well-kept and that the children were “pretty much [ ] on their own.” Dr. Karpawich’s report indicated that Barbara Foust did not clean the house and that “the children suffered from head lice.” Those characterizations are euphemistic when compared to Social Services’ description of a “lice infested, canine feces factory” with little food and no hot water. Yet this evidence, despite being more detailed than what the three-judge panel heard, does not establish prejudice because it does not differ in subject matter from the evidence actually presented. The panel already knew about the unclean and unsanitary state of Foust’s childhood home. It was therefore not an unreasonable application of Strickland for the state court to conclude that Foust was not prejudiced *548 by his attorneys’ failure to present this evidence. See Hill, 400 F.3d at 319.
As for evidence of incest and sexual abuse among Foust’s siblings, it is true that this evidence, specifically, was not presented at sentencing. However, it is still cumulative in the sense that Foust presents it now to prove a point that he already made before the three-judge panel. Foust argues that this new evidence would have demonstrated that he was brought up in an atmosphere which normalized violence toward women. But the panel knew that Foust grew up learning that violence toward women was normal.[2] Barbara Foust testified that Gary Foust abused her so frequently that she “believe[d] [her] natural skin tone was black and blue.” Dr. Karpawich reported to the panel that Foust’s sister, GaryAnne, believed as a child that “men would not get arrested ... for beating up their wives.” The panel heard ample evidence of the frequent and severe physical and emotional abuse that went on in the Foust household, abuse which Dr. Karpawich testified had “an impact on the way [Foust] would interact with other people, especially women.” The evidence of incest and sexual abuse among Foust’s siblings is another example of the violence that Foust witnessed toward women; although sexual abuse is a specific type of physical violence and abuse, both types of evidence prove the same point, and that point was presented to the three-judge panel. This evidence simply does not “add[] up to a mitigation case that bears no relation” to the one actually put before the panel. See Rompilla v. Beard, 545 U.S. 374, 393, 125 S.Ct. 2456,162 L.Ed.2d 360 (2005).
Nor is the evidence of Gary Foust’s neglect of Foust’s physical injuries either stronger or different from what was presented at sentencing. At sentencing, defense counsel presented evidence of Gary Foust’s violence and abuse towards his family, and specifically towards Foust— including that Gary was a violent alcoholic; frequently beat his wife and children; inflicted especially strong abuse on his sons, including Foust; and that his children, including Foust, were “terrified” of him.[3] Gary Foust admitted that there were times when he “probably hit [his children] harder than [he] should have,” and Barbara Foust testified that Gary Foust would strike the boys with his fist or “whatever he could pick up,” and also kick them. The panel learned that, unlike his siblings who would retaliate, Foust was afraid to fight back and merely took the abuse quietly. In light of this evidence, I simply cannot agree with the majority that Gary’s Foust’s neglect of Foust’s physical injuries is not cumulative. Gary Foust’s indifference towards Foust’s physical injuries is illustrative of his abusive and violent nature. In many ways, the evidence that was actually presented is more compelling *549 than the newly documented evidence: it is hard to see how neglecting a child’s physical injuries is worse than actually causing similar injuries.
Although much of the evidence that .the majority cites is in fact cumulative, some of the evidence that Foust’s counsel failed to present arguably does differ in both strength and subject matter from the evidence that was presented to the panel. Foust’s attempts to reform his sister Amy and his act of “saving a baby’s life” were not presented at the sentencing phase; and indeed, the picture of Foust’s character that was presented “offer[ed] nothing in mitigation.” See Ohio v. Foust, 105 Ohio St.3d 137, 823 N.E.2d 836, 870 (2004).
Further, the evidence presented at mitigation did not portray the extent of abuse and emotional abandonment that Foust suffered from his mother. However, neither was the three-judge panel “misled” into believing that “Foust has ‘a stable influence in his life who did everything she could to help him.’ ” See Maj. Op. at 541— 42 (alteration omitted) (quoting Johnson v. Bagley, 544 F.3d 592, 604 (6th Cir.2008)). Quite the contrary, defense counsel presented evidence establishing the utter lack of any stability in Foust’s life (the family was “marked by a lot of violence and instability, which had a traumatic effect on Kelly’s upbringing”); (“There was no stability in the home.”). Specifically with respect to Barbara Foust, the panel heard that she was incarcerated when Foust was a young child, was mentally unstable, had extramarital affairs with various men, was violent toward Gary Foust, did not clean the house, neglected the family finances, and did not pay the bills. They also learned that Foust himself believed his mother had mental problems. Further, contrary to the majority’s claim that the three-judge panel was led to believe Barbara Foust did everything she could to help her son, Barbara Foust told the panel that, although Kelly had sent her numerous letters since his arrest for Jose Coreano’s murder, she had just “left them sit [sic] on [her] T.V.” In light of the evidence that was presented, the majority’s claim that the panel was “misled” into believing that Barbara Foust was a stable and encouraging influence is a “gross distortion.” See Bobby v. Van Hook, — U.S. --, 130 S.Ct. 13, 18, 175 L.Ed.2d 255 (2009) (per curiam) (characterizing the Sixth Circuit’s misrepresentation of the factual record as a “gross distortion”).
Even in light of the new evidence— regarding Foust’s redeeming acts and his mother’s emotional abandonment and abuse — the state court’s determination that Foust suffered no prejudice cannot be called unreasonable. The mitigating evidence in this case is indeed compelling, but so are the statutory aggravators: murder during the course of an aggravated burglary, aggravated robbery, kidnapping, aggravated arson, rape, and attempted murder. I simply cannot agree with the majority that the Ohio Court of Appeals unreasonably applied Strickland when it concluded that Foust suffered no prejudice from his counsel’s failure to present additional mitigation evidence. To say that reasonable people cannot disagree as to whether Foust was prejudiced is the epitome of unreasonableness. Cf. Harrington, 131 S.Ct. at 786 (“A state court’s determination that a claim lacks merit precludes federal habeas relief so long as ‘fairminded jurists could disagree’ on the correctness of the state court’s decision.”).
I respectfully dissent.

. I do not join the majority’s broader discussion of defense counsel's performance, nor am I confident that Cullen v. Pinholster, — U.S. -, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), permits us to consider defense counsel's fee statements under these circumstances. Although the fee statements were before the state trial court, Cullen permits us to consider only "the record that was before the state court that adjudicated the claim on the merits.” Id. at 1398. We are reviewing the decision of the Ohio Court of Appeals— the court that adjudicated Foust's Strickland claim on the merits — and there is nothing in the record indicating whether the fee statements were part of that court's record. Cullen simply does not make clear whether or not we should assume that the record before the state trial court was part of the record of the court whose decision we are reviewing.

. In terms of deviant sexual behavior, the panel learned that Gary Foust would frequently bring women home from a bar and banish his wife (Foust’s mother) from the bedroom. Obviously this is not so severe as violent incest among siblings, but it establishes that the panel was aware that Foust grew up in an atmosphere where violence and deviant sexual behavior were commonplace.

. To bolster its conclusion that Foust was prejudiced, the majority cites the prosecutor’s closing statement, that he could not “recall hearing one single isolated incident where any particular physical abuse took place involving [Foust] and his dad.” See Maj. Op. 544 (quoting App'x Vol. 7 at 2671). In light of the ample evidence that Gary Foust specifically abused Foust, the prosecutor’s statement can only be considered a criticism of the level of detail presented regarding Gary Foust's abuse. Although the evidence that Gary Foust neglected Foust’s burns on one occasion is indeed more detailed and specific, it cannot establish prejudice because it is insufficiently different from the evidence that was actually presented. See Hill, 400 F.3d at 319.